UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMERCIAL CREDIT GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> AMH LOGISTICS, INC., et al., <br><br> Defendants. | Case No. 1:19-cv-01081-AWI-EPG <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S APPLICATION FOR A WRIT OF POSSESSION BE GRANTED <br><br> (ECF NO. 7) |

Plaintiff, Commercial Credit Group Inc., ("Plaintiff") filed this Complaint against Defendants, AMH Logistics, Inc. aka AMH Logistics Inc., ("AMH"); AM2 Logistic Inc., aka AM2 Logistic Inc. ("AM2"); Karnvir Singh ("Singh"); Maninder Kaur Bains ("Bains"); AMK Transport Inc. ("AMK"); and BKSG Transportation, LLC ("BKSG") (collectively "Defendants") on August 6, 2019. (ECF No. 1.) Plaintiff alleges that it issued various loans ("the Loans") to AMH and AM2 and that the remaining Defendants guaranteed performance of these loans. Plaintiff alleges that Defendants have breached their obligations and Plaintiff now seeks an order for a writ of possession pursuant to California Code of Civil Procedure section 512.010, et. seq. ("writ application"), allowing it to possess certain vehicles (referred to herein as the "repossession vehicles") pledged as collateral for the Loans.

For the reasons set forth below, the Court recommends Plaintiff's writ application be granted.

The Court further recommends that Plaintiff's request for a turnover order and private place order in connection with the writ of possession be granted.

1

## I. BACKGROUND

Plaintiff's writ application is supported by the Complaint; declaration of Don Pokorny, Plaintiff's senior vice President ("Pokorny Declaration"); and accompanying exhibits. To date, despite service, no Defendant has appeared in this action or offered any opposition to the writ application and evidence in support thereof. The Pokorny Declaration and the exhibits attached to same establish the following:

### A. The Original Loans

BKSG obtained several loans secured by personal property collateral from Plaintiff. These loans were as follows:

- A negotiable promissory note dated March 10, 2014, to Plaintiff in the original sum of $325,680.00. In connection with the loan, BKSG executed a security agreement granting a lien to Plaintiff in certain personal property described therein.
- A negotiable promissory note dated June 16, 2014, payable to Plaintiff in the sum of $162,912.00 and a security agreement granting Plaintiff a lien on various personal property described therein.
- A negotiable promissory note dated February 27, 2017, payable to Plaintiff in the sum of $1,627,968.00 and a security agreement granting Plaintiff a lien on various personal property described therein.
- A negotiable promissory note dated March 14, 2017, payable to Plaintiff in the sum of $642,000.000 and a security agreement granting Plaintiff a lien on various personal property described therein.

Additionally, Bains[1], Singh[2], AMK, and AM2 all guaranteed the obligations due from BKSG to Plaintiff.

On November 27, 2017, the BKSG loans referred to above were restructured in accordance with various loan restructuring agreements ("Loan Restructuring Agreements").

---

[1] According to the Pokorny Declaration, Bains is the President, Secretary, Registered Agent and Director of AMH.

[2] According to the Pokorny Declaration, Singh is the President, Secretary, Registered Agent and Director of AM2.

Plaintiff submits authenticated copies of the Loan Restructuring Agreements as attachments to the Pokorny Declaration. *See* (ECF No. 7-4, Exhibit 1.) The loans were restructured because BKSG was in default as to all of the loans and BKSG and AMH asked Plaintiff to transfer and restructure the obligations and indebtedness owed to Plaintiff. AMH then became a Texas corporation which sought to assume existing obligations of BKSG to Plaintiff. BKSG and AMH then entered into various transfer and assumption agreements ("Transfer and Assumption Agreements") (*Id.* at Exhibit 2.), authenticated copies of which are attached to the Pokorny Declaration. BKSG remained liable to Plaintiff pursuant to the terms of the Transfer and Assumption Agreements.

At the time of the Loan Restructuring Agreements, the titles to the various items of personal property, including the repossession vehicles, were in the name of BKSG. Pursuant to the terms of the Loan Restructuring Agreements, BKSG acknowledged that with respect to all titles to the vehicles in which Plaintiff was granted a security interest, Plaintiff was to be the lien holder on the new titles in favor of AMH. Defendants, however, failed to retitle the vehicles pledged as collateral by AMH, thus, according to Plaintiff, breaching the terms of the Loan Restructure Agreements and Transfer and Assumption Agreements. According to the Pokorny Declaration, the titles to the repossession vehicles remain in the name of BKSG, with Plaintiff remaining the lien holder on those titles.

Because of the aforementioned Loan Restructuring Agreements and Transfer and Assumption Agreements, Plaintiff entered into new loans with AMH and AM2 which are the subject of this lawsuit (collectively referred to herein as "the Loans") with respect to the claim and delivery of the personal property pledged as collateral for the Loans.

**B. The Loans and Guarantees**

*1. AMH Loans*

On or about November 27, 2017, in accordance with the pertinent Loan Restructure Agreement and Transfer and Assumption Agreement, Plaintiff entered into a negotiable promissory note with AMH whereby AMH was obligated to pay Plaintiff the sum of $646,812.00 ("Note 1"). In connection with Note 1, AMH granted Plaintiff a blanket lien on all of its assets

3

including all goods, chattels, and property described in an attached Schedule A to a security agreement (ECF No. 7-4, Exhibit 5) and any and all of its accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, investment property and all other property of whatever nature and kind wherever located, including all attachments, accessories, tooling, substitutions, replacements, replacement parts, additions, software and software upgrades, and all cash and non-cash proceeds. ("the Collateral"). The vehicles that were part of the Collateral in connection with Note 1 are referred to as the "Note 1 vehicles."

On or about November 27, 2017, in accordance with the pertinent Loan Restructure Agreement and Transfer and Assumption Agreement, Plaintiff entered into a negotiable promissory note with AMH whereby AMH was obligated to pay Plaintiff the sum of $605,826.00 ("Note 2").

In connection with entering into Note 2, AMH executed a security agreement once again granting Plaintiff a blanket lien on the Collateral together with a security interest in the specific vehicles set forth on Schedule A to the accompanying security agreement. *See* (*Id.* at Exhibit 9.) These vehicles are referred to as the "Note 2 vehicles."

On or about November 27, 2017, in accordance with the pertinent Loan Restructure Agreement and Transfer and Assumption Agreement, Plaintiff entered into a negotiable promissory note with AMH whereby AMH was obligated to pay Plaintiff the sum of $694,322.00 ("Note 3").

In connection with entering into Note 3, AMH executed a security agreement once again granting Plaintiff a blanket lien on the Collateral together with a security interest in the specific vehicles set forth on Schedule A to the accompanying security agreement. *See* (ECF No. 7-5, Exhibit 13.) The specific vehicles pledged as collateral in connection with Note 3 are referred to as the "Note 3 vehicles."

On or about November 27, 2017, in accordance with the pertinent Loan Restructure Agreement and Transfer and Assumption Agreement, Plaintiff entered into a negotiable promissory note with AMH whereby AMH was obligated to pay Plaintiff the sum of $737,640.00

("Note 4").

In connection with entering into Note 4, AMH executed a security agreement once again granting Plaintiff a blanket lien on the Collateral together with a Security Interest in the specific vehicles set forth on Schedule A to the accompanying security agreement. *See* (*Id.* at Exhibit 18.) The specific vehicles pledged as collateral in connection with Note 4 are referred to as the "Note 4 vehicles."

### 2. AM2 Loans

On or about June 26, 2018, Plaintiff made a loan to AM2 in the sum of $1,645,076.00 ("AM2 Note 1"). Pursuant to the terms of AM2 Note 1 and the accompanying security agreement (*Id.* at Exhibit 20.), AM2 granted Plaintiff a security interest in its personal property, which is the same description of property as set forth in the security agreements executed by AMH and also referred to collectively as "the Collateral." In connection with AM2 Note 1, Plaintiff was also granted a specific security interest in certain vehicles ("the AM2 Note 1 vehicles").

On or about June 29, 2017, Plaintiff made a loan to AM2 in the sum of $401,760.00 ("AM2 Note 2"). Pursuant to the terms of AM2 Note 2 and the accompanying security agreement (ECF No. 20), AM2 granted Plaintiff a lien on the same collateral as did AMH. Additionally, Plaintiff was granted a lien on three vehicles set forth in AM2 Note 2 ("AM2 Note 2 Vehicles").

### 3. Guarantees related to the AM2 Loans

In connection with AM2 Note 1 and AM2 Note 2, Defendants BKSG and AMH executed secured guarantees whereby they agreed that they would guaranty the obligations due from AM2 to Plaintiff. In connection with the granting of the credit by Plaintiff to AM2, BKSG and AMH also granted a further lien in all of their personal property assets. *See* (ECF No. 7-5, Exhibits 26 and 27.)

In connection with AM2 Note 1 and AM2 Note 2, Defendants Bains, Singh, and AMK executed guarantees individually obligating themselves to pay all sums due and payable by AM2 to Plaintiff. *See* (*Id.* at Exhibit 28.)

### 4. Guarantees related to the AMH loans

In connection with Note 1, Note 2, Note 3, and Note 4, Defendants AM2, BKSG, AMK,

and AMH executed a secured guaranty individually obligating these Defendants to pay all sums due and payable to Plaintiff by AMH. In connection therewith, these Defendants also granted Plaintiff a lien on all of their personal property assets. *See* (*Id.* at Exhibit 29.)

Further in connection with Note 1, Note 2, Note 3, and Note 4, Defendants Bains, Singh, and AMK executed guarantees obligating themselves to pay all sums due and payable to Plaintiff. *See* (*Id.* at Exhibit 30.)

### C. Default on Loans

According to Plaintiff, Defendants have defaulted on the Loans. As to all six loans, Defendants made one payment only and then failed to make all other payments due. Plaintiff sent demand letters to Defendants seeking repayment of the Loans to no avail.

Plaintiff alleges that the total due on Notes 1-4 is $2,364,779.33. Plaintiff alleges the total due on the AM2 loans is $1,844,925.45. As of July 12, 2019, the total sum due to Plaintiff is $4,209,704.70.

According to the Pokorny Declaration, Plaintiff has been able to take possession of some of the Note 1 vehicles, Note 2 vehicles, Note 3 vehicles, Note 4 vehicles, and AM2 Note 1 vehicles. Plaintiff has been able to take possession of the AM2 Note 2 vehicles. (ECF No. 7-3, p. 14-15.)

On August 6, 2019, Plaintiff filed this Complaint for claim and delivery of the repossession vehicles it has not been able to possess. (ECF No. 1.) Specifically, Plaintiff seeks (1) judgment for possession of the repossession vehicles, (2) judgment for claim and delivery with respect to the repossession vehicles, (3) judgment of possession of the collateral as against Defendants, (4) judgment for claim and delivery with respect to the Collateral, (5) reasonable attorney fees, (6) costs incurred in the lawsuit, and (7) other relief as is deemed appropriate.

On August 12, 2019, Plaintiff filed the instant application for a writ of possession under California Civil Procedure Code section 512.010. (ECF No. 7.) No Defendant has appeared or filed a response despite service of the writ application. The Court held a hearing on the application on September 20, 2019.

///

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 64 states, in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. P. 64(a). "California law provides for the return of property to creditors via a writ of possession." *4Wall Las Vegas, Inc. v. Triebwasser*, 2:12-cv-2746-KJN, 2013 WL 930620 at *3 (E.D. Cal. March 8, 2013) (citing Cal. Civ. Proc. Code § 512.010(a) which provides that "[u]pon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought.")). The writ application must include:

(1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of that instrument shall be attached.

(2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.

(3) A particular description of the property and a statement of its value.

(4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property, and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.

(5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

Cal. Civ. Proc. Code § 512.010(b). California Civil Procedure Code section 512.060 also provides that:

(a) At a hearing, a writ of possession shall issue if both of the following are found:

(1) The plaintiff has established the probable validity of the plaintiff's claim to possession of the property; and

(2) The undertaking requirements of Section 515.010 are satisfied.

(b) No writ directing the levying officer to enter a private place to take possession of any property shall be issued unless the plaintiff has established that there is probable cause to believe the property is located there.

### III. ANALYSIS

Because Plaintiff has met the showing required under California law as discussed below, the Court will recommend that its writ application be granted.[3]

**A. Requirements under Cal. Civ. Pro. Code § 512.010**

***1. A showing of the basis of Plaintiff's claim and that Plaintiff is entitled to possession of the property claimed***

At least for purposes of this writ application, Plaintiff has adequately demonstrated the basis of its claim and that it is entitled to possession of the repossession vehicles described below. Plaintiff's entitlement to possess the subject vehicles is set forth in the Complaint, the Pokorny Declaration, and the exhibits attached thereto, which include authenticated copies of the pertinent promissory notes, accompanying security agreements, and secured guarantees. *See* (ECF No. 1; ECF No. 7-3, p. 4-14; Exhibits 1-34 to the writ application). Together, the uncontroverted evidence establishes that AMH and AM2 entered into a series of loans with Plaintiff and that the at least one repossession vehicle was pledged as collateral for every loan. Further, the remaining Defendants each guaranteed AMH and AM2's performance of the Loans, and, at least as to the corporate guarantors, these guarantees were secured by all personal property of the guarantors. (ECF No. 7-5, Exhibits 26-29.) Finally, there is no dispute that Defendants have defaulted on their obligations pursuant to the Loans and guarantees. Upon default, the pertinent security agreements allow for acceleration of the entire indebtedness under all or part of the obligations immediately due and payable, as well as possession of Collateral by Plaintiff. Moreover, the

---

[3] The Court notes that California Code of Civil Procedure section 512.040 mandates that the plaintiff seeking a writ application provide Defendant with "Notice of Application and Hearing." Plaintiff complied with this requirement by personally serving Defendants with a "Notice of Application and Hearing" complying with California Code of Civil Procedure section 512.040. *See* (ECF Nos. 9-14.)

respective guarantees also allow Plaintiff to take possession of any of the guarantor's pledged property upon default of the Loans.

### 2. *A showing that the property is wrongfully detained*

Plaintiff's Complaint and the Pokorny Declaration and exhibits attached thereto establish that Defendants have defaulted on their obligations to pay the Loans issued to AMH and AM2. *See* (ECF No. 1; ECF No. 7-3, p. 4-14; Exhibits 1-34 to the writ application). Together, the uncontroverted evidence also establishes that the repossession vehicles were collateral for the Loans or for the guarantees issued pursuant to the Loans (*Id.*) The total sum due on the Loans is $4,209,704.70. Defendants have refused to tender the vehicles to Plaintiff despite demand. *See* (ECF No. 7-3, p. 14.) At least for purposes of this writ application, Plaintiff has made a sufficient showing that Defendants have wrongfully detained the subject vehicles.

### 3. *Particular Description and Statement of its Value*

Pokorny's Declaration sets forth a statement of the value of the repossession vehicles. Pokorny opines that the total value of the subject vehicles is $1,287,091.00, assuming the vehicles are in good condition, normal wear and tear expected. (ECF No. 7-3, p. 15-16.) Pokorny explains that he ascertained the value of the vehicles by "checking auction prices, similar sales, and using computers to ascertain recent values with respect to the vehicles (including referencing recognized sources in the truck industry such as National Automobile Dealers Association (or NADA) and Commercial Truck Paper)." (*Id.*) Pokorny also explains that he has been involved in liquidating similar types of vehicles over many years working for Plaintiff and in the equipment leasing and financing business. (*Id.*) Thus, the Court finds that Plaintiff has sufficiently set forth the value of the vehicles.

As for a description of the vehicles, Plaintiff's writ application contains an exhibit that specifically describes the repossession property. *See* (ECF No. 7-5, Exhibit 34.). This exhibit specifically lists the make, model, and identification numbers of the repossession vehicles. Accordingly, Plaintiff has provided a particular description of the repossession vehicles and a statement of their value. *See, e.g, Ascentium Capital, LLC v. Singh*, 16-00356, 2016 WL 595189 at *3 (E.D. Cal. May 5, 2016) (finding, in writ of possession application involving trailers, that

identification numbers of trailers sufficiently identified the property for purposes of a writ application).

### 4. *Probable Cause Regarding Location*

The Pokorny Declaration also sets forth possible locations of the subject vehicles, with the caveat that a precise location of the vehicles cannot be known, as they are moveable. The addresses are detailed below and are the addresses used by AMH and AM2, as well as addresses associated with Singh and Bains. (ECF No. 7-3, p. 16-17.) Pokorny also lists the address of the last known sighting of any of the subject vehicles. (*Id.*) Also included in the writ application are statements of information and other records on file with the California Secretary of State reflecting some of the locations as set forth in the Pokorny Declaration. *See* (ECF No. 7-5, Exhibit 36.)

Because the repossession vehicles are moveable, Plaintiff requests, in addition to a writ of possession for the subject vehicles, a "turn over order and a private place order so that [Plaintiff] can enter a private place to take possession of the repossession vehicles." (ECF No. 7-2, p. 16.)

Plaintiff's request for a turn over order and private place order are addressed below. As for the writ application, the Court finds Plaintiff has adequately provided probable cause that the subject vehicles will be found at one or more of the locations listed in the Pokorny Declaration, as Plaintiff has set forth uncontested evidence that these are the addresses associated with Defendants. *See United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir. 1982) ("When property to be seized is being moved from place to place, it may be reasonable to issue warrants directed to multiple locations, and officers need not confine themselves to chance by choosing only one location for a search."); *see also Ascentium Capital, LLC*, 2016 WL 595189 at *3 (finding probable cause for multiple potential locations of trailers).

### 5. *Statement that property has not been seized*

The Pokorny Declaration also states that the trailers have not been taken for a tax, assessment, or fine pursuant to statute; or seized under an execution against the property of the Plaintiff.

///

**B. Requirements under Cal. Civ. Proc. Code § 512.060**

California Civil Procedure Code § 512.060 sets forth additional requirements before the writ may issue. "Two of the three requirements under this section are duplicative of requirements under § 512.010—Plaintiff's establishment of the probable validity of its claim to possession of the property and its showing of probable cause that the property at issue is located at the private place to be entered to seize the property." *Id.* at *4. (citing Cal. Civ. Proc. Code § 512.060(a)(1)). Here, Plaintiff already established the probable validity of its claim to possession of the subject vehicles, as well as a probable cause to believe that the subject vehicles are located at the above-mentioned addresses.

The remaining issue is whether the undertaking requirements of California Civil Procedure Code § 515.010 have been satisfied. Cal. Civ. Proc. Code § 512.060(a)(2). Section 515.010 provides that:

> …The undertaking shall be in an amount not less than twice the value of the defendant's interest in the property or in a greater amount. The value of the defendant's interest in the property is determined by the market value of the property less the amount due and owing on any conditional sales contract or security agreement and all liens and encumbrances on the property, and any other factors necessary to determine the defendant's interest in the property.

Here, because the total sum due to Plaintiff is $4,209,704.70 and the value of the repossession vehicles is only $1,287.091.00, Defendants do not have a positive interest in the vehicles and Plaintiff will not be required to post an undertaking. *See Ascentium Capital, LLC*, 2016 WL 2595189 at *4 (refusing to require an undertaking when the plaintiff provided evidence that the statutorily-defined value of the collateral was less than the amount owed).

**C. Turnover Order**

In addition to the writ of possession, Plaintiff also seeks a turnover order pursuant to California Code of Civil Procedure § 512.070, which provides:

> If a writ of possession is issued, the court may also issue an order directing the defendant to transfer possession of the property to the plaintiff. Such order shall contain a notice to the defendant failure to turn over possession of such property to plaintiff may subject the defendant to being held in contempt of court.

Plaintiff argues that a turnover order is appropriate here because the subject vehicles are moveable and may be moved to a different location than that described in the writ application and

for which the Court will direct the levying officer to enter.

The Court agrees with Plaintiff that a turnover order is appropriate here given the moveable nature of the collateral. *See Ascentium Capital, LLC*, 2016 WL 2595189 at *5 (granting request for turnover order where collateral was moveable).

**IV.    CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application for a writ of possession under California Civil Procedure Code § 512.010 (ECF No. 7.) be granted;
2. The Clerk of Court shall immediately issue a writ of possession directing the United States Marshal within whose jurisdiction the property listed below, or some part of it, is located, to seize said property and retain custody of the property until released or sold pursuant to California Civil Procedure Code § 514.030. The levying officer shall further comply with all applicable requirements of California Civil Procedure Code §§ 514.010-514.050. The following property may be seized pursuant to the writ of possession:

| Equipment Description | Serial Number |
|---|---|
| 2017 Great Dane Everest ETL-111 53x102 Refrigerated Trailer with Air Ride Tandem Axle, Four (4) Aluminum Outer Wheels and Four (4) | 1GRAA0628HB702793 |
| 2016 Great Dane ESS-1114-11053 53x102 Aluminum Refrigerated Trailer with Four (4) Aluminum Outer Wheels and Four (4) Steel Inner | 1GRAA0622GW703073 |
| 2016 Great Dane ESS-1114-11053 53x102 Sheet and Post Refrigerated Trailers, Stainless Steel Exter or Front, Aluminum Corrugated Sid | 1GRAA0620GW704822 |

| | | |
|---|---|---|
| 1 2 3 | 2017 Kenworth T680 76" High Roof Sleeper with Paccar MX13 500hp engine, Eaton FO18E31 1A Ultrashift Plus Transmission | 1XKYDP9X5HJ127630 |
| 4 5 6 | 2014 utility VS2RA 53' x 102" Refrigerated Trailer with Thermoking SB230 Refrigeration Unit S/N 6001134612 | 1UYVS2534EU786921 |
| 7 | 2016 Kenworth T680 Sleeper tractor | 1XKYDP9X5GJ482604 |
| 8 | 2016 Kenworth T680 Sleeper tractor | 1XKYDP9X5GJ119459 |
| 9 10 11 | 2016 Utility VS2RA 53' x 102" Refrigerated Trailer with Thermoking S-600 Refrigeration Unit S/N 6001196679 | 1UYVS2537GU571939 |
| 12 13 14 | 2016 Utility VS2RA 53' x 102" Refrigerated Trailer with Thermoking S-600 Refrigeration Unit S/N 6001196683 | 1UYVS2533GU571937 |
| 15 16 17 18 | 2016 Utility VS2RA 53x102 Refrigerated Trailers with Hendrickson Air Ride Suspension, Sliding Tandem Axle, Corrugated S | 1UYVS2536GU597917 |
| 19 20 21 | 2015 Kenworth T680 Sleeper Truck, 76" Aerodyne Sleeper, Cummins ISX 525 HP Engine, 1 Speed Trans | 1XKYD49X2FJ436919 |
| 22 23 24 | 2016 Utility VS2RA 53x102 Refrigerated Trailer, Hendrickson Surelok Anti-Dock Walk Device, 36" Kingpin, Hendrickson Ult | 1UYVS2532GU571833 |
| 25 26 27 | 2016 Volvo VNL64T670 61" Tall Roof Integral sleeper with Volvo I-Shift ATO2612D 12-Spe | 4V4NC9EH2GN965993 |
| 28 | 2015 Kenworth T660 Tractor with 72" | 1XKYDP9XXFJ426379 |

| | |
|---|---|
| Aerodyne Sleeper, Double Bunk, Cummins ISX 525 HP Engine, Jake Brake, 13 Speed Tran | |
| 2016 Volvo VNL64T670 61" tall roof integral sleeper with Volvo Eco-Torque D13 455hp Engine, Volvo I-Shift ATO2612D 12-Spe | 4V4NC9EH9GN965991 |
| 2009 Utility Refrigerated Trailer with Carrier Unit s/n/: LAU91088861 | 1UYVS25399U721410 |
| 2009 Utility Refrigerated Trailer with Carrier Unit s/n: LAZ91087773 | 1UYVS25349M749518 |
| 2009 Utility Refrigerated Trailer with Carrier Unit s/n: LAY91082870 | 1UYVS25359U721307 |

3. The Clerk of Court be directed to attach a copy of these findings and recommendations and the order adopting same to the writ of possession.
4. The Court find that Plaintiff has shown probable cause to believe that the repossession vehicles are located at any of the following addresses:
   - 2347 W. Belmont Avenue, Fresno, California 93728
   - 2021 N. Milpitas Boulevard, Suite 227 E, Milpitas, California 95035
   - 7684 N. Gilroy Avenue, Fresno, California 93722
   - 2014 Tulare Street, Suite 213, Fresno, California 93721
   - 6569 N. Riverside Drive, Suite 309, Fresno, California 93722
   - 5430 W. Palo Alto, Suite 108, Fresno, California 93722

   and that when levying the writ of possession, the levying officer(s) may enter the above-listed premises for purposes of seizing any or all of the subject vehicles.
5. If any or all of the subject vehicles cannot be found at the foregoing addresses, Plaintiff may apply *ex parte* in writing to this Court for an endorsement on the writ directing the levying officer seize the property at any other private place not specified in the writ, in accordance with California Civil Procedure Code § 512.090.

6. Pursuant to California Civil Procedure Code § 512.070, Defendants be further directed to transfer possession of the repossession vehicles as described above to Plaintiff via the United States Marshal and that Defendants be cautioned that failure to turn over possession of the property to Plaintiff may subject Defendants to being held in contempt of Court.
7. The United States Marshal, in executing the writ of possession issued by this Court may procure the services of a locksmith or utilize any other reasonable means necessary to gain access to the premises where the property that is the subject of the writ of possession described above is located—to wit:
    - 2014 Tulare St., Suite 213, Fresno, CA 93721
    - 6569 N. Riverside Dr., Suite 309, Fresno, CA 93722
    - 5430 W. Palo Alto, Suite 108, Fresno, CA 93722
    - 2021 N. Milpitas Blvd, Suite 227E, Milpitas, CA 95035
    - 7684 N. Gilroy Ave, Fresno CA 93722
    - 2347 W. Belmont Ave, Fresno CA 93728
8. Defendants be informed that they may prevent levy of the writ of possession or obtain redelivery of the property after levy of the writ of possession, if they file an undertaking pursuant to California Civil Procedure Code § 515.020 in the amount of $2,574.182.00.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. 636(b)(1). Within thirty days after being served with these findings and recommendations, Defendants may file written objections with the Court, such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 835, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**November 6, 2019**__  /s/ Erin P. Gross
UNITED STATES MAGISTRATE JUDGE